RONALD LEE EATON *v.* STATE OF INDIANA.

[No. 1-775A116. Filed February 4, 1976.]

*Donald R. Peyton,* of Lebanon, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

## ISSUES PRESENTED

PER CURIAM.—Issues presented for review are:

1. Was the in-court identification of defendant-appellant Eaton impermissibly tainted by an overly suggestive photographic display.

2. Was the verdict of the jury sustained by sufficient evidence.

## STATEMENT OF FACTS:

Danna Jean Gordon and her husband, Franklin, resided near Zionsville in Boone County, Indiana, in a two story home about 200 yards off the main highway. On the afternoon of November 21, 1974, Mrs. Gordon was upstairs in the home and heard a loud and persistent knocking at her front door for about five minutes. She looked out the window and observed defendant standing in front of the door, making a noise, retreating some few feet and looking to the rear of the house. This procedure was continued for about five minutes and she secured a very good look at defendant. On her refusal to answer the door defendant left.

On the afternoon of December 5, 1974, Mrs. Gordon was again in the same room when she heard loud and persistent knocking at her front door. She again looked out the window and saw defendant, where he remained for about five minutes, operating as he had previously on November 21st. She recognized defendant as the same man who had been there previously. She also saw a black pick up truck with stock racks in the driveway with a man in the driver's seat.

Defendant did not leave and Mrs. Gordon heard a crashing sound downstairs at the rear of her home and prepared her-

self to go downstairs. When she stepped into the hallway she heard movement in the back hall downstairs. Her husband was at work and the children were at school and she was at home alone. She called out, "Is somebody there? Who's there?" after which she heard the rear door slam and went downstairs. She then looked out a window and saw defendant going around the side of the house where he got into the truck and crouched down. The truck motor had been started before he got to it and the truck immediately left with defendant attempting to hide from view.

Mrs. Gordon proceeded to examine the house and found the rear door closed with the frame torn loose and laths and plaster knocked loose from the door jamb and lock destroyed. The door would not stay closed because of damage. There was snow and water on the hall floor in front of the damaged door as well as wet footprints on the hall rug, although no member of the family had been in that section of the house since 7:30 that morning.

Deputy Sheriff Brandt, after a call, went to the scene where he obtained a description of the intruder and the truck from Mrs. Gordon and reported them to his dispatcher. Brandt found footprints in the snow from the driveway to the back door and return. Tire tracks in the driveway showed the truck had conventional tires on the left side, with one snow tire on the right side.

Brandt later that afternoon obtained a photograph which he showed to Mrs. Gordon, who identified it as defendant.

Officers later arrested defendant at his home and there found a black truck with stock racks and one snow tire, which matched the description given by Mrs. Gordon.

Some days later Deputy Brandt took four photographs to Mrs. Gordon, who identified one of them as defendant and another as looking like him, but as definitely not being the intruder, and this was defendant's brother.

## CHARGES

Defendant was charged by information in two counts, namely IC 1971, 35-13-4-4 (Burns § 10-701), First Degree Burglary, and IC 1971, 35-12-2-1 (Burns § 10-4710), Automobile Banditry, and was later tried on an amended information charging both counts, with the result being that a jury found him guilty on each count and he was duly sentenced accordingly.

## DISCUSSION

Defendant contends that the pretrial photographic displays were so impermissibly suggestive as to taint the subsequent in-court identification of the defendant. He urges that the initial single photo shown to the prosecuting witness was a suggestive procedure but states further ". . . we are dealing with a question of degree which is measured under 'the totality of the circumstances' standard—a flexible standard material to every 'tainted identification' and resultant due process claim."

He further urges that the showing to Mrs. Gordon of the single photograph of the defendant implanted defendant's image indelibly upon her mind to the extent subsequent events could not render that charged error harmless.

The argument is untenable for the reasons that Mrs. Gordon, in the daytime, observed defendant at the front door. He was pounding on the front door in an attempt to determine if the house was occupied at that time. Between the knockings defendant would back off into the view of Mrs. Gordon so that it was then that his appearance and looks became indelible in her mind. This same procedure was followed in the short space of two weeks and Mrs. Gordon testified she immediately recognized him on the second occasion as being the man at the door on the first occasion. She described him as being red haired and with sufficient detail that the police recognized his photo

from her description. Her observation of the four photos, including defendant and his brother, evidence her absolute identification from observation of the defendant in that she distinguished him from his brother, who she remarked looked very much like him but was not the man who had been at the door.

In court Mrs. Gordon pointed defendant out without hesitation and said that there was no question at all in her mind about the identification of the defendant, Rondal Eaton.

In *Sawyer* v. *State* (1973), 260 Ind. 597, 298 N.E.2d 440, the court said:

> ". . . The in-court identification may nevertheless be admitted, even though the confrontation procedure was suggestive, if 'under the totality of the circumstances' the in-court identification is reliable. . . . (cases cited omitted.)
> "The factors to be considered in deciding whether under the circumstances there was substantial likelihood of misidentification include:
> '. . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' *Neil* v. *Biggers, supra.*"

Without deciding whether the initial photographic display was suggestive we find there was no substantial likelihood of misidentification at trial. *Parsley* v. *State* (1973), 261 Ind. 106, 300 N.E.2d 652; *Emerson* v. *State* (1972), 259 Ind. 399, 287 N.E.2d 867.

It is our opinion there was sufficient evidence for the jury to determine the identification of defendant.

Issue number two is that the verdict was not sustained by sufficient evidence.

Defendant states in his brief:

> "The State has succeeded in its proof of unauthorized breaking and entering, but proof of those elements alone will not sustain an inference of felonious intent."

We agree with this admission that the State did prove beyond a reasonable doubt an unauthorized breaking and entering of the Gordon home.  Defendant does not contend that intent to steal cannot be proven by circumstantial evidence, but contends only that the circumstances are insufficient to prove such intent to steal.  Defendant cites a number of burglary cases where conviction was affirmed for the reason the defendant was found in possession of stolen goods taken from the premises and bases his defense on the fact that that circumstance was missing from the case at bar.

In the case at bar defendant was not acquainted with the Gordons, who lived some 200 yards from the main travelled highway in open country.  There apparently was nothing wrong at the Gordon home on either date of visits by defendant that he could be attempting to arouse any occupant for the safety of the occupants or of the property.  There was no known reason why defendant would damage and practically destroy the rear door and door jamb because of dislike for the Gordons.

Defendant on two different occasions spent at least five minutes banging on the door and looking beyond the house in an apparent attempt to determine if anyone was home or if anyone on the farm might be approaching the house from the rear.  Mrs. Gordon heard the back door crash and thereafter heard the defendant on the ground floor of the house.  Defendant on each occasion had a motor vehicle standing in the driveway nearby by which he could and did leave the premises.

It was after Mrs. Gordon spoke while on the stairway that she heard the back door slam.  She went downstairs and saw the red headed defendant running to the truck, all the time attempting to hide himself, and then enter the truck and scoot down in an attempt to hide.

Snow had been carried into the back of the house, there

was snow on the floor and wet footprints on the rug inside the hallway near the door.

Certainly there was evidence of flight. In the case of *Bradley* v. *State* (1972), 153 Ind. App. 421, 287 N.E.2d 759, 762, this court said, in speaking of flight:

". . . At most it is only one circumstance to be considered by the jury with the reasons that prompted it, tending to show guilt or by which an inference of guilt may be raised, and *it has no probative force unless it satisfactorily appears that the accused fled to avoid arrest or imprisonment for the crime charged. . . .*" (Original emphasis.)

Similarly, in this case, flight is indicative of defendant's criminal intent.

The court speaking further in *Bradley, supra,* said:

"On appeal, this court will not weigh the evidence nor determine the credibility of witnesses. We will only consider that evidence most favorable to the State together with all logical and reasonable inferences which may be drawn therefrom. Consequently, a conviction will be affirmed if there is substantial evidence of probative value from which the trier of facts could infer that the defendant was guilty beyond a reasonable doubt. *Vaughn* v. *State* (1972), [259] Ind. [157], 284 N.E. 2d 765; *Hash* v. *State* (1972), [258] Ind. [692], 284 N.E.2d 770." 287 N.E.2d at 760. See also *Garner* v. *State* (1975), 163 Ind. App. 573, 325 N.E.2d 511, 515.

We are of the opinion that the above evidence was of such probative value the jury could reasonably infer beyond a reasonable doubt that the defendant entered the Gordon home for the purpose of committing theft therein.

Defendant, as to Count II of the amended information charging automobile banditry states that as the charge of burglary fails the charge of automobile banditry fails also, and relies on the authority of *Freeman* v. *State* (1967), 249 Ind. 211, 231 N.E.2d 246, which cites the case of *Todd* v. *State* (1951), 23 0Ind. 85, 101 N.E.2d 922 wherein our Su-

preme Court reversed a conviction for automobile banditry. There, the State failed to prove the appellant had, on or near the premises, an automobile, or similar vehicle, which he intended or did use in an attempt to escape or in which to escape.

In the case at bar the truck was owned by the defendant's mother-in-law; was identified as the truck at the Gordons' home; and was found setting to the rear of defendant's home the night after the burglary. The truck had a driver under the wheel while at Gordons', and the defendant ran to and entered the truck and attempted to hide his identity therein as the driver started the same and drove defendant from Gordons' property after defendant first learned there was someone in the home who might see him before he fled to the truck.

The evidence proves the truck was at the premises defendant attempted to burglarize and was used by him to escape. The State has proved the material and essential elements of this crime and the conviction thereon was proper.

Judgment affirmed.

NOTE.—Reported at 341 N.E.2d 205.