WILLIAM C. SMITH *v.* STATE OF INDIANA

[No. 1-877A173. Filed February 16, 1978. Rehearing denied March 14, 1978. Transfer denied July 6, 1978.]

*Malcolm G. Montgomery*, of Evansville, for appellant.

*Theodore L. Sendak*, Attorney General, *Charles D. Rodgers*, Deputy Attorney General, for appellee.

ROBERTSON, C.J. — William C. Smith (Smith), defendant, appeals his conviction by jury of assault and battery with intent to gratify sexual desires.[1] Smith was sentenced for an indeterminate period of two (2) to twenty-one (21) years.

On Saturday, November 6, 1976, Mrs. Patricia Duncan was babysitting for the prosecutrix, K.V., and her brother while their mother was at work. During that day, Mrs. Duncan, Mrs. William (Sharon) Smith, and Mrs. Rose Blackwell went to the grocery store, leaving the children in the care of the defendant. Upon their return

---

1. IC 1971, 35-1-54-4 (Burns Code Ed.).

from the grocery store, Mrs. Duncan followed Mrs. Smith to her home. Mrs. Duncan testified that when they approached the door, Mr. Smith looked "very upset" and that Mrs. Smith said, "I see you have been f- - - - - - around with that little six year old w- - - - again." Mr. Smith then struck his wife knocking her against Mrs. Duncan. When Mr. Smith opened the door, the prosecutrix could be seen lying on the living room sofa covered by a blanket, exhibiting a look of terror. When K. V. was questioned about the alleged incident of November 6, 1976, she became very upset, her eyes filled with tears, and she would not talk to her mother about it. The incident was related to the mother and Mrs. Duncan by the prosecutrix on November 11, 1976, at which time K. V. was taken to the hospital. The examining doctor forewarned the mother of the probability of negative results because of the time lapse involved. Charges were filed against the defendant on November 12, 1976.

The defendant preserved the following issues for review:

(1) Whether the trial court abused its discretion in finding the prosecutrix competent to testify.

(2) Whether the trial court committed reversible error in admitting certain testimony as a tacit admission.

(3) Whether the verdict is supported by sufficient evidence.

Judgment affirmed.

I.

The defendant contends that the trial court erred in finding the prosecutrix competent to testify in that she did not understand the obligation and nature of an oath. The State responds that under the required test of competency, the trial court did not abuse its discretion.

At the time of trial, K.V. was six years old. IC 34-1-14-5 renders children less than 10 years old incompetent, "unless it appears that they understand the nature and obligation of the oath." However, the Indiana Supreme Court has never required the child to be able to define the term "oath." *Lewis v. State* (1976), 264 Ind. 288, 342 N.E.2d 859. Rather, in *Martin v. State*

(1969), 251 Ind. 587, 244 N.E.2d 100, the Court held that the statute is satisfied if the trial court can find: (1) that the child knows the difference between telling the truth and telling a lie, and (2) that the child realizes that he or she is under some compulsion to tell the truth. The compulsion to tell the truth need not be fear of punishment. *Johnson v. State* (1977), 265 Ind. 689, 359 N.E.2d 525. Moreover, the determination that the child is competent to testify is within the discretion of the trial court, *Scales v. State* (1975), 165 Ind. App. 588, 333 N.E.2d 814, and cases cited therein, and will be reversed only upon a showing of clear error — where there is no evidence from which the trial court could have found that the child understood the nature and obligation of the oath. *Johnson v. State, supra.*

In *Borosh v. State* (1975), 166 Ind. App. 378, 336 N.E.2d 409, the defendant's counsel asked the prosecutrix if she had ever told a lie. The court of appeals held such a question to be unrevealing as to the witness's veracity under oath.

> "Whether a child has ever indulged in a factual fabrication under everyday circumstances is neither relevant nor revealing as to such child's truthfulness as a sworn witness in a court proceeding. Rather, such questions may be characterized as tending to unreasonably harass, annoy or embarrass a witness, and may be properly excluded by the trial court in its discretion."

Moreover, in *Shipman v. State* (1962), 243 Ind. 245, 183 N.E.2d 823, the Court held that although the "interrogation" may indicate that the witness did not know what an oath was, she did know what it meant to lie and to tell the truth, and thus there was no abuse of discretion. Further, a witness testifying in a confused manner is not relevant to the issue of competency, *Johnson v. State, supra*, and conflicting testimony as to technical questions of the competency of the prosecutrix is not, in and of itself, illustrative of a manifest abuse of discretion. *Martin v. State* (1958), 239 Ind. 174, 154 N.E.2d 714.

The following testimony was elicited from the prosecutrix during the hearing on defendant's motion to suppress:

## [DIRECT EXAMINATION]

Q.  And do you know what it means to tell the truth?

A.  Uh huh.

Q.  Do you know what it means to tell a fib?

A.  Yes.

Q.  Will you tell Mr. Standley there what happens if you tell a fib?

A.  We get a whipping and we go in the corner and go to bed.

Q.  Do what, honey?

A.  We get a whipping, go to bed and get in the corner.

Q.  Do you tell fibs?

A.  Sometimes, sometimes I don't.

Q.  And do you know when you can't tell a fib?

A.  You're supposed to tell the truth.

Q.  Now, if I asked you to tell me only the truth and never tell me a fib, can you do that? You have to say yes or no so that we can hear you. If I asked you to tell me only the truth and never tell a fib, can you do that honey, say yes or no.

A.  Yes.

Q.  Now, do you know what I mean if I ask you to promise to tell met the truth?

A.  Uh huh.

Q.  Can you promise me that you'll tell the truth?

A.  Uh huh.

Q.  Would you ever tell me a fib after you promised me to tell the truth?

A.  No.

Q.  If you tell us something that is not true, what would that be called?

A.  A fib.

Q.  And if it were true, what would you call it?

A.  The truth.

* * *

### [CROSS-EXAMINATION]

Q. She's your friend too, isn't she. If she asked you to tell a fib for her, would you do it?

A. No.

Q. If your mommy asked you to tell a fib, would you do it?

A. No.

Q. Why not?

A. Cause I don't tell lies no more. I want to tell the truth.

Q. You've decided from now on to tell the truth, is that right?

A. Yes.

Q. Did you used to tell lies?

A. Uh huh.

Q. What made you change your mind?

A. The truth. I want to tell the truth because I didn't like lies anymore and I hate them because God don't like that. . . .

* * *

### [STATE'S CASE-IN CHIEF, BY THE COURT]

BY THE COURT: Karen, do you know what a lie is?

A. No.

BY THE COURT: What is a lie?

A. If you tell a lie you will go and get in a corner.

BY THE COURT: What is it you call it when you don't tell the truth?

A. A fib.

BY THE COURT: Is a fib good or bad?

A. Bad.

BY THE COURT: If you tell a fib, what happens to you?

A. You get in a corner or go to bed.

BY THE COURT: So you get punished if you tell fibs. Now you know it is always the best thing to tell the truth, isn't it?

A.      (Shakes head, "yes.")

BY THE COURT: And you are promising us that you will tell the truth, right? Are you?

A.      (Shakes head, "yes.")

BY THE COURT: You know that it is important that you tell the truth?

A.      (Shakes head, "yes.")

BY THE COURT: I notice that you are shaking your head. So that it can be picked up on the tape recorder will you answer loud enough so that it can pick it up?

A.      (Shakes head, "yes.")

BY THE COURT: I will ask you if you will promise to tell the truth, so help you, God?

A.      Yes.

We find no abuse of discretion in the trial court's determination that the prosecutrix was competent to testify. Beyond that point, it was for the jury to judge her credibility and weigh her testimony.

## II.

The defendant also contends that the trial court committed manifest error in allowing state's witness, Patricia Duncan, to testify to a statement made by defendant's wife to defendant concerning the prosecutrix. The State responds by stating that the trial court was correct in admitting the statement as a tacit or adoptive admission.

In *Robinson v. State* (1974), 262 Ind. 463, 317 N.E.2d 850, the victim's grandmother saw the injured grandchild lying on the floor and the mother sitting in the chair crying. A fireman who helped arrange for the child to be taken to the hospital, upon leaving, recognized the grandmother as saying: "You shouldn't have thrown the baby against the wall. You were beating him too hard," and recognized the mother as replying: "Shut up." Although the fireman's testimony was hearsay, the Court stated that the defendant's response to the accusation renders both the response and the accusation admissible as an adoptive

admission. However, Indiana recognizes an exception which provides that a charge or accusation made while the accused is in police custody does not call for a reply or response. *Lukas v. State* (1975), 165 Ind. App. 50, 330 N.E.2d 767; *Kern v. State* (1957), 237 Ind. 144, 144 N.E.2d 705. *Diamond v. State* (1924), 195 Ind. 285, 144 N.E. 466, involved several witnesses who heard defendant's dying wife repeatedly accuse him of killing her. He denied her accusations and asked her to accuse another person; yet once he said that he did not mean to kill her. Thus, because defendant's conduct was not an unequivocal denial of his wife's accusations, her statements were admissible with his replies. Therefore, such hearsay statements inextricably connected with a defendant's equivocal replies become admissible as an admission. This exception to the hearsay rule is limited to testimony about conversations heard or conduct seen by the witness; the witness himself must have seen or heard the defendant's reaction to the hearsay accusations. *Jethroe v. State* (1974), 262 Ind. 505, 319 N.E.2d 133.

In the present case, the witness heard the accusation and observed the defendant's reaction to it. There was no error in admitting this evidence.

### III.

It is axiomatic that when one questions the sufficiency of the evidence to support a conviction, a reviewing court will not weigh the evidence or judge the credibility of the witnesses. We look only to the evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom. If each element of the offense is supported by substantial evidence of probative value from which the trier of fact could have inferred the defendant's guilt beyond a reasonable doubt then the judgment of the trial court must be affirmed. *Faust v. State* (1977), _____ Ind. _____ , 366 N.E.2d 175. *Rosell v. State* (1976), 265 Ind. 173, 352 N.E.2d 750. A conviction may be sustained on circumstantial evidence alone or in concert with direct evidence, so long as the evidence is of such probative value that a reasonable inference of guilt beyond a reasonable doubt may be drawn therefrom. *Lisenko v. State* (1976), 265 Ind. 488, 355 N.E.2d 841.

Additionally, any conflict in testimony between state and defense witnesses is a question of credibility and therefore is not properly treated on appeal. *Eaton v. State* (1976), 168 Ind. App. 45, 341 N.E.2d 205.

In Indiana, a conviction of assault and battery with intent to gratify sexual desires may be sustained on the uncorroborated testimony of the prosecuting witness, even when such witness is a minor. *Scales v. State, supra*. In the instant case, the prosecutrix stated that the defendant pulled her pants down, touched her genital area and "put his finger inside of her." The defendant then "helped" her take a bath.

We find the testimony of the prosecutrix sufficient to establish both the overt act and the specific intent to gratify sexual desires.

Affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE—Reported at 372 N.E.2d 511.