Danny Joe SMITH, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 880S333.

Supreme Court of Indiana.

April 1, 1982.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Danny Joe Smith, was convicted by a jury of child molesting, a class A felony, Ind.Code § 35–42–4–3 (Burns 1979 Repl.), and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.). He was sentenced to two terms of thirty years to be served consecutively. This direct appeal presents the following twelve issues:

1. Whether the trial court erred in denying defendant's motions for mistrial based upon the inattentiveness of a juror;

2. Whether certain errors occurred during the challenges to the jurors;

3. Whether defendant's confession was erroneously admitted into evidence;

4. Whether it was reversible error to permit the victim to identify the defendant in court;

5. Whether certain photographs of defendant and a drawing of a pistol were erroneously admitted into evidence;

6. Whether there was error in allowing certain testimony on the issue of defendant's sanity, and in placing the burden of proof on this issue on defendant;

7. Whether it was error for the trial court to refuse to instruct the jury concerning the length of the sentence;

8. Whether it was error for the court to refuse defendant's tendered instruction covering the testimony of one witness;

9. Whether the evidence of defendant being armed with a gun was sufficient to support the verdict;

10. Whether defendant was properly tried and convicted on the habitual offender count;

11. Whether the trial court erred in imposing sentences on both the underlying felony and the habitual offender count; and

12. Whether it was reversible error for the court to permit the inclusion of defendant's confession in the presentence investigation report.

A summary of the facts from the record most favorable to the state shows that on October 3, 1979, the victim who was then ten years old was walking to her school in New Castle, Indiana. The defendant appeared from behind a building and asked her if she wanted ten dollars. When she declined, defendant drew a pistol, grabbed her by the arm, and led her into an alleyway. There, defendant took down his pants, took down the victim's pants, and forced the victim to lie down. In his confession, defendant admitted that he put his left hand inside the victim's vagina and rubbed his penis against her leg. The victim cried and begged defendant not to hurt her. Later in the day, the victim told her mother about the incident, and it was reported to the police.

In the course of the police investigation, the victim was shown some photographic arrays. The police had received a tip that defendant could be a possible suspect because of his involvement in a prior, similar incident. They included a four-year old photograph of him in one of the photographic arrays, but the victim did not make a positive identification from that picture. A few days after the incident, on October 8, 1979, the police talked to defendant and he agreed to be photographed at the police station. The next day, defendant came to the police station as he had agreed, but he had shaved off his mustache. He said he had no objection to his picture being taken. One of the photographs taken at this time was later shown to the victim. She immediately identified this photograph of defendant and remarked that he had shaved off his mustache. Defendant was arrested later that day. He signed a waiver of

rights form and then gave an oral confession to the police. He repeated his oral confession on a tape recorder and a transcript of the taped confession was introduced into evidence at the trial. Defendant presented a defense of insanity to the jury.

I.

Defendant first contends that the trial court erred in overruling his motion for mistrial made after the jury returned its verdict on the child molesting charge but before they were reconvened for the habitual offender phase of the trial. The basis for the motion was the fact that during the testimony of the last witness, a court-appointed psychiatrist, Dr. Yarling, one of the jurors, Mr. Bertram, fell asleep. At that time, the trial judge observed the juror doze off and called a recess as soon as possible. He then instructed the bailiff to give the juror a glass of water to hold and drink. Defendant made no objection at that time.

It appears from the record that the jury was selected in this case on Monday, February 11, 1980, and the trial continued on February 12 and 13. Dr. Yarling's testimony was given on February 13, and the verdict on the child molesting count was returned at 9:30 p. m. on that night. The jury was then instructed to return on the following day, February 14, 1980, in order to consider the habitual offender count. Before the jury reconvened on February 14, 1980, defendant made his motion for mistrial on the basis that since Mr. Bertram had fallen asleep at one point, defendant was denied his right to a fair and impartial trial by twelve jurors.

The court overruled the motion for mistrial, reconvened the jury and gave the preliminary instructions on the habitual offender count. Immediately after the court finished reading the preliminary instructions, defendant called to the court's attention that juror Bertram appeared to have fallen asleep once again during the reading of the instructions and the court had called out his name to wake him up. Defendant renewed his motion for mistrial and requested the court to question Bertram.

Bertram told the court that he had been working at night from 10:30 p. m. to 7:00 a. m. during the three days of the trial because there was no one else to take his job. He stated that when he was questioned during *voir dire*, he had not known he was going to be required to work at night, but had only learned this after being sworn in on the first day of the trial. He said he never informed the court or anyone else that he had to work at night during the trial. Defendant renewed his motion for mistrial on the child molesting count and also moved for a mistrial in the habitual offender phase.

The court overruled both motions, but did grant a four-day continuance so that Bertram could get sufficient sleep over the weekend. The judge ordered the trial to be reconvened on Tuesday, February 19, 1980, and instructed Bertram that he was not to work the night before that date. The trial on the habitual offender count was held on February 19, 1980, and the jury returned its guilty verdict on that same day.

█ It is well settled that juror misconduct is in the first instance a question for the trial court and the decision to grant or deny a mistrial is a matter committed to the trial court's discretion, reviewable solely on the issue of abuse of discretion. *Rodriguez v. State*, (1979) Ind., 388 N.E.2d 493; *Bean v. State*, (1978) 267 Ind. 528, 371 N.E.2d 713; *Bradberry v. State*, (1977) 266 Ind. 530, 364 N.E.2d 1183.

█ In this case, the judge took corrective action immediately both times he noticed the juror appear to doze off. The two cases in Indiana which deal with the inattention of jurors due to sleepiness are *Merry v. State*, (1975) 166 Ind.App. 199, 335 N.E.2d 249, and *Alderman v. Cobb*, (1884) 94 Ind. 602. It has been established by those cases that there is a two-step approach in determining whether prejudice has resulted from the juror's inattention.

"First, it must be shown that the juror was actually inattentive. Second, it must be shown that the juror's action actually resulted in prejudice to the defendant." *Merry v. State, supra,* 166 Ind.App. at 230, 335 N.E.2d at 267.

This approach is consistent with our well-settled rule that although a trial may not be free from error, every error of the trial court does not require that the case be reversed. Only when the error has caused prejudice to the defendant is there cause to reverse. *Bates v. State,* (1971) 256 Ind. 490, 269 N.E.2d 749.

■ Here, the record shows that the trial court took appropriate corrective steps each time the juror's inattentiveness was noticed. The first time the juror appeared to have fallen asleep was during the testimony of a court-appointed psychiatrist who was testifying against defendant's claims of insanity. We fail to see how missing part of this testimony would be substantially prejudicial to defendant. The judge took appropriate action at that time to insure the juror stayed awake during the rest of that day's proceedings. On the next day, when the juror appeared to doze off again, the trial was stopped and continued on a later date when the juror had had sufficient time to rest. We find that defendant has not met his burden of showing that the alleged inattentiveness of the juror under the circumstances actually resulted in prejudice to him. We find no error in the trial court's denial of defendant's motions for mistrial.

## II.

■ Defendant next alleges errors in the denial of two of his challenges for cause and in the refusal of the trial court to permit him to exercise more than his allotted ten peremptory challenges. A consideration of the brief record presented on these issues convinces us that defendant's arguments are without merit. He alleges that one juror, Gary Baughn, was incompetent because of his statement that he believed that accused individuals often attempt to use the defense of insanity just to get out of trouble even where they were really not insane. Defendant contends that another juror was not competent because he was in the midst of moving his residence out of the county. Defendant's challenges for cause to these two jurors were denied. From the record before us, we find that the trial court elicited satisfactory explanations on these questions from both jurors and there was no error here.

■ Furthermore, defendant has not included the entire *voir dire* of the jury in the record. He has included only excerpts from the testimony surrounding his challenges for cause of these two jurors. As the state points out, we cannot tell from this incomplete record of the *voir dire* whether defendant had exercised his total number of peremptory challenges before his challenges for cause were denied and therefore whether he was in fact prejudiced by the denials. It is clear that it is the duty of a defendant to present a complete record to this Court. Assertions of error not disclosed by the record are not available for review. *Brown v. State,* (1981) Ind., 417 N.E.2d 333; *Daniels v. State,* (1980) Ind., 408 N.E.2d 1244. Since the record before us is not complete enough for us to consider all aspects of this issue, it is not properly before us for review.

■ Finally, defendant presents no authority in support of his argument that he was entitled to more than the ten peremptory challenges provided by our statute, Ind.Code § 35–1–30–2 (Burns 1979 Repl.). He has thus waived this issue at this level. Ind.R.Ap.P. 8.3(A)(7); *Murphy v. State,* (1977) 267 Ind. 184, 369 N.E.2d 411; *Mosley v. State,* (1977) 266 Ind. 675, 366 N.E.2d 648.

## III.

Defendant next contends that the trial court erred in denying his motion to suppress and in permitting the state to enter his taped confession into evidence over his timely objection. The trial court held a

long hearing on the motion to suppress. After considering all of the circumstances, the judge denied the motion and concluded that the confession was voluntarily, knowingly and intelligently given.

The record reveals that defendant was contacted by the police through a telephone call to his home. He agreed to come into the police station to have his picture taken. The picture was taken with a Polaroid camera and was shown to the victim later that same day as part of a photographic array. The victim immediately identified defendant's picture, so the police again called defendant at his home and asked him to come back down to the police station.

Defendant returned to the station, with his wife and child accompanying him. He refused to appear in a lineup without his attorney present. A police officer then gave him a waiver of rights form and read him his rights. The officer told him to take his time in reading the form. Defendant said he understood his rights and signed the form. He was again asked to participate in a lineup and again refused. He was then placed under arrest.

There was some discussion between the police officers and defendant to the effect that he was probably sick and needed help. One officer suggested that the first step in getting help would be for him to admit that he needed help. Defendant asked if he would be able to go to the hospital and the officer replied that that would be entirely up to the courts or the judge and that the police couldn't promise him one way or the other. At two points during this discussion, defendant was given time to be alone with his wife. During the discussion, a police officer suggested that it would be to defendant's advantage to give a statement of his involvement and that the court would probably take that into consideration. Defendant then agreed to give an oral statement to the officer and repeated his oral statement to a tape recorder.

■ It is well settled that the admissibility of a confession is controlled by determining from the totality of circumstances whether or not the confession was given voluntarily and not through inducement, violence, threats or other improper influences so as to overcome the free will of the accused. *Long v. State*, (1981) Ind., 422 N.E.2d 284; *Love v. State*, (1980) Ind., 400 N.E.2d 1371; *Arch v. State*, (1978) 269 Ind. 450, 381 N.E.2d 465. The question of voluntariness is one for the trial court. We review the question on appeal as we do other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial evidence of probative value to support the trial court's finding. *Schutz v. State*, (1981) Ind., 413 N.E.2d 913. We have consistently held that vague and indefinite statements by the police such as "seeing what they could do for him" or it would "be in his best interest to tell the real story" are not sufficient inducements to render a subsequent confession inadmissible. *Schutz v. State, supra; Turpin v. State*, (1980) Ind., 400 N.E.2d 1119.

■ In the instant case, defendant was not subjected to any lengthy interrogations and there is no evidence of any physical abuse or coercive action by the police which logically would have misled defendant or overborne his will in regard to his voluntary statements. The record shows that defendant was well aware of his rights including his right to an attorney during any questioning and that he knowingly waived these rights. The officers clearly stated that they could not make any promises. There was substantial evidence to support the trial court's finding of the voluntariness of defendant's confession, and it was properly admitted.

## IV.

Defendant next argues that the court should not have allowed the victim to identify him at the trial because the pretrial identification procedures were impermissibly suggestive. He alleges that out of the

seven photographs shown to the victim for the third photographic array only two came close to his age and physical description. However, the record shows that the photographic arrays were compiled fairly. In the array containing the photographs of the defendant before he shaved his mustache, all the photographs show men with a mustache. In the array showing defendant after he shaved his mustache, three of the photographs show men without a mustache. All of the photographs except one show young white males of somewhat unkempt appearance which would match in general the description of the assailant given by the victim.

It is true that identification procedures which are so suggestive as to give rise to a substantial likelihood of misidentification violate a defendant's due process rights. *Young v. State,* (1979) Ind., 395 N.E.2d 772; *Sawyer v. State,* (1973) 260 Ind. 597, 298 N.E.2d 440. We find no evidence of unnecessarily suggestive procedures in the circumstances of this case and therefore no potential taint of the in-trial identification. There was no error here.

### V.

Defendant next alleges error in the admission into evidence of two photographs of himself and claims he had not voluntarily consented to having his picture taken. These photographs were taken at the police station after the police had called defendant at home and asked him to come down to the station. Defendant claims that he was not informed that he was a prime suspect or that he could withhold his consent from being photographed. However, the record shows that the police asked defendant over the phone whether he would mind coming down to the police station to have his picture taken. He was again asked at the station whether he had any objection to his picture being taken and he said no. Defendant was not under arrest at this point and freely left the police station after the pictures were taken.

As we have clearly pointed out in cases involving a consent to a search, when the consenting person is not in custody it is only necessary for the state to demonstrate that the consent was in fact voluntarily given and was not the result of duress or coercion, express or implied. *Sims v. State,* (1980) Ind., 413 N.E.2d 556. We find the record here shows that defendant voluntarily consented to having his picture taken.

Defendant also objected to the admission into evidence of a drawing made by the victim. While the victim was on the witness stand, she drew a picture of the pistol she said the defendant had used to intimidate her during the assault. The victim described the gun, when she saw it, and for how long. She also said her drawing did not look exactly like the gun but was as accurate as she was able to draw it. It is well settled that drawings, charts or diagrams are admissible into evidence if the person drawing them testifies to their substantial accuracy and they contain only data known to the drawer by personal observation. *Jenkins v. State,* (1975) 263 Ind. 589, 335 N.E.2d 215. There was a sufficient foundation for the admission of the drawing of the gun.

### VI.

In this case, defendant entered a special plea of not guilty by reason of insanity. The court appointed two doctors to examine defendant and both doctors testified at the trial. During the cross-examination of one doctor, the prosecutor asked him whether he had ever discussed prior similar behavior with defendant. Over defendant's objection, the doctor stated that defendant had told him that at age 18 he had fondled a twelve year old girl and served eighteen months at the Indiana Youth Center. The court admonished the jury that the evidence concerning past similar behavior by defendant was being allowed for the purpose of assessing defendant's sanity on the date of

the crime, but was not to be used to infer guilt of the crime charged.

It is well settled in Indiana that when a defendant raises the defense of insanity, the general rule is that there is great latitude in admitting evidence of other conduct of the defendant, limited to the extent that such conduct must be relevant to the issue of insanity. *Stevens v. State*, (1976) 265 Ind. 396, 354 N.E.2d 727; *Barnes v. State*, (1975) 263 Ind. 320, 330 N.E.2d 743; *Fulmer v. State*, (1967) 249 Ind. 261, 230 N.E.2d 307. Here, the similar past conduct of defendant was relevant to the issue of his insanity as evidenced by his propensity for child molestations. While the testimony that he was incarcerated for the prior incident may have been unnecessary, the prejudicial effect was limited by the court's admonition to the jury. We find no error in the trial court's denial of defendant's motion for mistrial as this was within the trial court's sound discretion and no clear error in this ruling has been shown. *Downs v. State*, (1977) 267 Ind. 342, 369 N.E.2d 1079.

Defendant further raises a constitutional challenge to Ind.Code § 35–41–4–1(b) (Burns 1979 Repl.), which requires the defendant to establish the defense of insanity by a preponderance of the evidence. He cites no authority which would support a reversal of the long-standing principle that the states have the power to allocate the burden of proof on insanity. We have clearly upheld this statute as constitutional in *Norris v. State*, (1981) Ind., 419 N.E.2d 129, and *Price v. State*, (1980) Ind., 412 N.E.2d 783.

## VII.

Defendant next contends that it was error for the court to refuse to instruct the jury concerning the length of sentences for the various felony classes. This Court has clearly settled this issue contrary to defendant's argument. An accused has no right to have the jury informed as to potential penalties since our present penal code provides that juries no longer fulfill any function regarding sentencing. *Comstock v. State*, (1980) Ind., 406 N.E.2d 1164; *Craig v. State*, (1979) Ind., 398 N.E.2d 658; *Debose v. State*, (1979) Ind., 389 N.E.2d 272.

## VIII.

During the instant trial, the two medical experts testified that defendant was sane. Defendant's wife testified that in her opinion the defendant was not sane. She based her opinion on her experience as a ward attendant in a hospital for profoundly retarded persons. Defendant now contends that it was error for the trial court to have refused to give his tendered final instruction No. 6 concerning lay testimony. His instruction read as follows:

"Lay testimony on the issue of sanity is proper and may be credited over that of expert witnesses."

However, the record shows that the court gave three instructions which adequately covered the substance of defendant's instruction. The court's preliminary instruction No. 9 instructed the jury that it was their duty alone to weigh the testimony and that they should not disregard the testimony of any witness without a reason and without careful consideration. The court's final instruction No. 7 instructed the jury about expert testimony and the issue of defendant's sanity. The jury was specifically instructed to consider *all* of the evidence relating to defendant's mental disability. The court also gave the following instruction No. 8:

"Evidence has been introduced by testimony of one witness that the defendant was insane on October 3, 1979, at the time of the act alleged herein. Generally, a witness may not express an opinion. However, any person who had an opportunity to observe is permitted to express an opinion as to sanity.

"In determining the value of such opinion, you should consider the opportunity

that such witness had to observe the facts and her knowledge of the defendant. You will apply the general rules for determining the credibility of witnesses. "You may accept or disregard such opinion. It is for you to determine what weight should be given to it, if any." Defendant objected to this instruction on the basis that it was unclear and implied to the jury that the only evidence of insanity was the testimony of the one witness. We find no error here since the jury had already been specifically instructed to consider all of the evidence relating to defendant's mental disability and that the quantity of evidence on a particular point should not control their determination of the truth. It is not error to refuse instructions, the substance of which is covered by other instructions. *Lynn v. State*, (1979) Ind., 392 N.E.2d 449; *Davis v. State*, (1976) 265 Ind. 476, 355 N.E.2d 836; *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770.

### IX.

Defendant contends that there was not sufficient proof that he was actually armed with a gun to support his conviction as a class A felony. The only evidence establishing the use of a gun was the testimony of the victim. She stated that when she first refused to go with defendant in return for money, he grabbed her by the arm and then pulled out a gun. She described the gun as a real small gun with a red stripe on it. Defendant denied ever owning or using any type of handgun. His past record of child molestation indicated that he had not previously used weapons but relied on offers of money or other favors to get the child to accompany him.

Defendant is essentially asking us to judge the credibility of witnesses which, as a court of review, we cannot do. *Muse v. State*, (1981) Ind., 419 N.E.2d 1302. Neither can we reweigh the evidence; rather, we will look only to that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there

is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Wofford v. State*, (1979) Ind., 394 N.E.2d 100; *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509. As defendant points out, there are a few rare exceptions where this Court has impinged on a jury's responsibility to judge the credibility of witnesses. *Rodgers v. State*, (1981) Ind., 422 N.E.2d 1211. But these exceptions were marked by "inherently improbable" testimony, *Penn v. State*, (1957) 237 Ind. 374, 146 N.E.2d 240, or coerced, equivocal, wholly uncorroborated testimony of "incredible dubiosity," *Gaddis v. State*, (1969) 253 Ind. 73, 251 N.E.2d 658.

 We will not intrude on the jury's province here. While the victim's description of the gun was not a precise one, it was not so vague as to be incredible. There was nothing inherently improbable or equivocal in the victim's description of the entire incident including the way in which defendant used the gun. It is clear that a conviction may be based on the sole uncorroborated testimony of the victim, even if that victim is a minor. *Hill v. State*, (1979) Ind., 394 N.E.2d 132; *Smith v. State*, (1978) Ind.App., 372 N.E.2d 511. The testimony of the victim in this case is sufficient to sustain defendant's conviction.

### X.

Defendant next raises several errors concerning the habitual offender count. We first note that we have consistently upheld the habitual offender statute, Ind.Code § 35–50–2–8 (Burns 1979), against every constitutional argument raised by defendant, including his allegation that it violates Article 1, section 18 of the Indiana Constitution because it is not based on principles of reformation. *Baker v. State*, (1981) Ind., 425 N.E.2d 98; *Hall v. State*, (1980) Ind., 405 N.E.2d 530; *Wise v. State*, (1980) Ind., 400 N.E.2d 114; *Norris v. State*, (1979) Ind., 394 N.E.2d 144. We see no need to discuss those constitutional arguments again.

■ Defendant also contends that one section of the habitual offender statute is ambiguous. He argues that it must be read to mean that the jury should be reconvened for a sentencing hearing on the underlying felony in an habitual offender case and be allowed to sentence a defendant on the underlying felony prior to hearing the habitual offender charge. We find no merit to this contention.

The habitual offender statute reads in pertinent part:

"*Habitual offenders.*—(a) The state may seek to have a person *sentenced* as an habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two [2] prior unrelated felony convictions.

\* \* \* \* \* \*

"(c) If the person was convicted of the felony in a jury trial, the jury shall reconvene for the sentencing hearing; if the trial was to the court, or the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing . . . ." Ind.Code § 35–50–2–8 (Burns 1979) (emphasis added).

It is obvious that section (c) of this statute is referring specifically to the habitual offender hearing which is labeled as a "sentencing" in section (a). Thus, we find no ambiguity here and no conflict with other sentencing provisions found in other parts of the penal code.

■ Defendant also maintains that since his two prior felony convictions occurred prior to the passage of the new habitual offender statute, he was entitled to be charged and tried under the old habitual offender statute. We have answered this precise contention adversely to defendant's position in *Hall v. State, supra.*

■ During the habitual offender phase of the instant trial, the state presented evidence that defendant was convicted and sentenced on two prior charges of assault and battery with intent to gratify sexual desires. There was no need for the state to present evidence that these offenses were felonies as that was a matter of law on which the jury was properly instructed by the court.

## XI.

■ Defendant further contends that he should be sentenced only for being an habitual offender and should not also be sentenced for the underlying felony. There is no merit to this contention as the statute now clearly provides that the sentence on the habitual offender count is an enhancement of the sentence for the underlying felony and is not an alternative sentence. Ind.Code § 35–50–2–8, *supra; Page v. State,* (1979) Ind., 395 N.E.2d 235.

## XII.

■ Defendant finally contends that his confession should not have been included in the presentence report as it would then be forwarded to the Department of Correction where it might fall into unauthorized hands and be used for nonjudicial purposes. We find no error here as it is clear that the probation officer and the trial court have wide discretion as to the contents of the presentence report. Ind.Code § 35–4.1–4–10 (35–50–1A–10) (Burns 1979 Repl.). The right to have a presentence report considered prior to sentencing is a privilege granted by the legislature to defendants; it is not a fundamental right. *Pulliam v. State,* (1976) 264 Ind. 381, 345 N.E.2d 229. While the statute grants broad discretion to the court as to what may be included in the presentence report, there is no provision for deleting any items before the report is forwarded to the Department of Correction. Ind.Code § 35–4.1–4–10, *supra.*

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.