**Monica FASSOTH, Roy Watson, Dennis Watson, Appellants,**

v.

**STATE of Indiana, Appellee.**

No. 64S00–8612–CR–1068.

Supreme Court of Indiana.

July 7, 1988.

Joseph N. DiNatale, Oak Park, for Monica Fassoth and Roy Watson.

Charles R. Deets III, Thomas J. O'Brien, Heide Sandy Deets & Kennedy, Lafayette, for Dennis Watson.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Michael Gene Worden, Deputy Attys. Gen., Indianapolis, for State.

GIVAN, Justice.

A jury trial resulted in appellants' convictions as follows:

Monica Fassoth was convicted of Dealing in Cocaine, a Class A felony, for which she received a sentence of twenty (20) years.

Roy Watson was convicted of Delivery of Cocaine, a Class A felony, for which he received a sentence of forty (40) years, Possession of Cocaine with the Intent to Deliver, a Class A felony, for which he received a sentence of forty (40) years, and Possession of Marijuana with the Intent to Deliver, a Class C felony, for which he received a sentence of eight (8) years, the sentences to run concurrently.

Dennis Watson was convicted of Aiding in the Delivery of Cocaine, a Class A felony, for which he received a sentence of twenty (20) years.

The facts are: In October of 1985, Officer Mike Krawczyk was employed as an

investigator for the Porter County Narcotics Unit. He called William Fassoth on October 2, 1985 to inquire about obtaining drugs. Fassoth told Krawczyk that he would have to talk to his source, whom he later called "Roy" on several occasions, to determine the availability and cost of the drugs. Later, they arranged to meet in a White Castle parking lot to consummate the transaction.

When Krawczyk met Fassoth, he was wearing a hidden transmitter and tape recorder, and Officer O'Kelly, also at the White Castle, was equipped with a receiving unit which allowed her to hear the conversation between Fassoth and Krawczyk. Upon Fassoth's suggestion, they drove two cars to the Smokey Joe's Restaurant parking lot in Portage, Indiana. Krawczyk gave Fassoth $580 and Fassoth told him to wait there for his return in a few minutes.

Upon Fassoth's return Krawczyk got into Fassoth's car. Fassoth gave Krawczyk a clear plastic bag of white powder and offered him a good deal on an ounce of cocaine.

On October 3, 1985, Fassoth delivered one ounce of cocaine to Krawczyk for which he was paid $2,160. Krawczyk purchased $1,800 worth of cocaine from Fassoth and his wife Angela on October 18, 1985 and they discussed the possibility of purchasing a large quantity of cocaine.

On November 11, 1985, Fassoth sold Krawczyk one quarter-pound of cocaine for $6,800. After this transaction, police arrested Fassoth and his wife. At this time, Fassoth and his wife agreed to cooperate with police in their effort to arrest the source, appellant Roy Watson. Fassoth agreed to wear a hidden listening device and continue the transaction for the sale of $52,000 worth of cocaine.

Fassoth received use immunity and testified that during October and November of 1985 his sister, appellant Monica Fassoth, was living with appellant Roy Watson. He stated that the supplier of cocaine for each of his drug deals with Krawczyk was appellant Roy Watson, who received the money for the sales.

In addition to corroborating Krawczyk's testimony about the drug sales, Fassoth gave a detailed description about the transaction which occurred on November 11, 1985 for which he was to receive $1,000 for his efforts.

On that date, appellant Roy Watson told William Fassoth to meet Krawczyk and find out whether he had the money before he brought "the stuff." At their meeting, Krawczyk produced $6,800 and Fassoth returned to appellant Roy Watson's home with the money. Watson then announced that the plans previously made to conduct the drug sale were to be changed. Watson gave Fassoth four ounces of cocaine which he delivered to Krawczyk. It was at that time William Fassoth and his wife were arrested, and they decided to aid police.

William Fassoth then spoke to Roy Watson on the phone and was directed to meet his sister, Monica Fassoth, at the County Market. When Fassoth met his sister, he was wearing a hidden transmitter and recording device. They drove to Watson's mother's apartment, and Roy and Dennis Watson were waiting for them in the parking lot. They all entered the apartment, ate, and exited for the Holiday Inn. Outside the apartment building, Dennis Watson told William Fassoth to "[b]e careful". At that time, Fassoth noticed a blue Samsonite suitcase in the back seat of the Cadillac which his sister was driving. Inside a hotel room, they decided that William Fassoth was to obtain one-half of the money from Krawczyk then give him one-half of the cocaine.

William and Monica Fassoth then met Krawczyk in the County Market parking lot. William told Krawczyk that he was to pay $26,000, or one-half of the amount negotiated, Monica would give him one-half of the cocaine, and they would further negotiate as to performing the balance of their contract. When William was talking with Krawczyk, Dennis Watson drove his car alongside the Cadillac and scanned the parking lot. At that point, police arrested Monica Fassoth and Dennis Watson and simulated arresting William and Angela Fassoth. The Samsonite suitcase contained

498.2 grams of 88.6 percent cocaine powder.

Roy Watson was arrested in the hotel room. Cocaine spoons, roach clips, a cocaine diluting agent, and other paraphernalia were found in a leather case located in the hotel room.

Pursuant to a search warrant, police searched the residence of appellants Monica Fassoth and Roy Watson. They found a triple beam scale, cocaine and marijuana.

Appellants Monica Fassoth and Roy Watson argue that they were deprived of a fair trial due to the improper restriction of their cross-examination of William Fassoth. The basis of their argument is twofold. They contend they were unduly limited in questioning Fassoth about plea negotiations or potential sentences for offenses which Fassoth and his wife had been charged, and that the trial court erroneously prohibited them from questioning Fassoth about his past criminal conduct.

Prior to trial, the court granted the State's motion in limine which precluded appellants from inquiring about evidence of any specifics of offers or counteroffers concerning plea agreements. However, the court stated it would not preclude cross-examination about whether plea negotiations had occurred or about the witness's motivation for testifying. Appellants assert that the limitation of the right to cross-examine William Fassoth violated their Sixth Amendment right of confrontation.

■ The trial judge has discretion to determine the scope of cross-examination, and only a clear abuse of that discretion warrants a reversal. *Carter v. State* (1987), Ind., 505 N.E.2d 798.

We held in *Jarrett v. State* (1986), Ind., 498 N.E.2d 967 (Givan and Pivarnik, JJ., dissenting) that significant harm results when the jury is prevented from learning the extent of benefit received by witnesses who accept a plea bargain in exchange for their testimony, and the exposure of a witness's motivation in testifying is an important function of the constitutionally protected right of cross-examination.

■ In appellant's case, Fassoth received no plea bargain in exchange for his testimony. The jury heard evidence that when Fassoth was arrested police told him that although they could not make any promises, they would make a recommendation to the prosecutor if Fassoth would finish the drug sale. Fassoth stated he was testifying pursuant to a court order under a grant of use immunity. Also he testified that he twice spoke to police about the plea bargain offered to his wife, and when asked what he expected to get from his testimony, he said he did not know.

We find that the jury was fully apprised of the circumstances surrounding Fassoth's testimony. The court did not err in disallowing questioning regarding a nonexistent plea agreement. *Hatchett v. State* (1987), Ind., 503 N.E.2d 398.

During cross-examination, appellants asked Fassoth whether he was convicted of a crime in 1974, and the State objected. Away from the jury, the trial court stated that Fassoth's criminal history included his convictions of theft of goods under $100, fleeing the police, carrying a gun without a permit, and possession of stolen property, all arising out of one arrest in 1974. Determining that all offenses were misdemeanors except for possession of stolen property, the trial court sustained the State's objection to all prior offenses except the possession of stolen property conviction. When cross-examination resumed, appellants asked Fassoth whether he was convicted of possession of stolen property, and he said, "yes". Appellants believe that their Sixth Amendment rights were violated when the trial court partially sustained the State's objection.

■ A witness may be cross-examined for impeachment purposes about prior criminal conviction of infamous crimes or crimes of dishonesty. *Brown v. State* (1984), Ind., 459 N.E.2d 376; *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210.

■ Theft is available for use in impeachment as a crime involving dishonesty or false statement. *Hunt v. State* (1983), Ind., 455 N.E.2d 307. However, only a

total denial of cross-examination on an area concerning a witness's credibility will amount to a constitutional denial of the right to cross-examination. Any less than a total denial of cross-examination is viewed as within the discretion of the trial court to regulate the scope of cross-examination. *Rinard v. State* (1979), 271 Ind. 588, 394 N.E.2d 160.

■ In appellant's case, the jury did not hear evidence of the lesser offenses above set out. However, they did hear evidence that at the time of his testimony, Fassoth was charged with three counts of dealing in cocaine in two counties, had received use immunity, and had been ordered by the judge to testify. They heard explicit evidence of his participation in several drug sales and of his conviction of possession of stolen property. We find the limitation of cross-examination was within the trial court's discretion.

■ Appellants Monica Fassoth and Roy Watson contend that the trial court's instruction on constructive possession contained an inaccurate statement of the law. The jury was instructed as follows:

"Under the theory of constructive possession, the evidence need only establish the defendant's knowledge of the presence of the item and the defendant's ability to control the item. This knowledge can be inferred from the fact that the item was found in a place under defendant's dominion and control. *Taylor v. State*, [___] Ind. [___], 482 N.E.2d 259 (1985). *Martin v. State*, 175 Ind. App. 503, 372 N.E.2d. 1194 (1978)."

Appellants assert that the instruction failed to state that a defendant must know an item is contraband, and the State must prove constructive possession beyond a reasonable doubt.

Upon review, this Court is bound to consider the instructions as a whole. *Roland v. State* (1986), Ind., 501 N.E.2d 1034. In appellants' case, the jury was instructed that if possession of property constitutes any part of the prohibited conduct and they believe that a defendant was unaware of his possession of the property, he should be acquitted. Also they were instructed that the law requires that a defendant must be acquitted unless his guilt is determined beyond a reasonable doubt. Considering the instructions as a whole, the content of appellants' allegation of error was covered by the instructions given to the jury.

Appellants also complain that the instruction failed to state that the defendant must have exclusive control of the area where the contraband was located.

■ Constructive possession is the intent and capability to maintain dominion and control over the illegal drugs. Proof of a possessory interest in the premises in which the illegal drugs are found is adequate to show the capability to maintain control over them. When possession of the premises is not exclusive, the inference of intent must be supported by additional circumstances pointing to an accused's knowledge of the nature of the controlled substances and their presence. *Davenport v. State* (1984), Ind., 464 N.E.2d 1302.

■ Fassoth stated that before his sister's arrest she picked him up in a blue Cadillac, the same car he had seen Roy Watson and her drive in the past. The blue Samsonite suitcase containing the cocaine was in the back seat of the Cadillac. Considering these facts, we conclude that appellants had exclusive control over the drugs. Therefore, they incurred no prejudice in the exclusion of the word "exclusive" from the instruction on constructive possession.

■ Appellants Monica Fassoth and Roy Watson argue that error occurred when the trial court played a tape recording of a conversation between Monica and William Fassoth. The conversation occurred when William wore a microphone and recording device on his person while in the car with Monica.

Appellants cite *Lamar v. State* (1972), 258 Ind. 504, 282 N.E.2d 795 in which this Court reversed Lamar's conviction and granted him a new trial because a tape recording played at trial was not of sufficient clarity and intelligibility. The recording was made in an interrogation room and

was of such poor quality that only portions of it could be understood after replaying it numerous times while reading a typewritten transcript. We concluded that the development of sound recording equipment had advanced to the point that no interrogation room should be without adequate equipment and its misuse was inexcusable.

Appellants' case is distinguishable from *Lamar*. The tape played at appellants' trial did contain sounds of static and interference. However, the portion played to the jury was sufficiently audible to understand that they were in the midst of a drug sale. Further, the standard of quality expected of a recording in an interrogation room cannot be used to judge a recording of a person wearing a "bug." Because of clothing worn over the microphone and Fassoth's moving about in and out of the car, interference and static on the tape were inevitable.

Also, the content of the tape-recorded conversation was merely cumulative of William Fassoth's testimony about the drug transaction. Therefore, we find no reversible error. *Watkins v. State* (1984), Ind., 460 N.E.2d 514.

Appellants also argue that reversible error occurred when the prosecutor made certain references to the content of the taped conversation during final argument. Previous to the commencement of final argument, the court sustained an objection to the admission into evidence of a transcript of the tape-recorded conversation. The court ordered that only a portion of the tape would be played for the jury, and no transcript would be given to them.

During final argument, the prosecutor was reviewing the facts which led to appellants' arrests. He stated that he would paraphrase the testimony of a witness as best he could, and he apologized for any misstatements. He then reiterated his interpretation of the conversation between William and Monica Fassoth.

Appellants now assert that the prosecutor was reading from his prepared notes, or a transcript, during his description of the events, thus he violated the trial court's order eliminating transcripts of the tape from the evidence.

Upon review, we consider whether the alleged improper remarks during final argument are designed to arouse the passions of the jury or put the defendant in a position of grave peril. *Brumfield v. State* (1982), Ind., 442 N.E.2d 973. It is proper for counsel to argue both law and facts during final argument. Counsel may propound any conclusions based upon his or her analysis of the evidence. *Cheney v. State* (1985), Ind., 486 N.E.2d 508. We find that the prosecutor's comments were within the proper ambit of final argument.

Appellants Monica Fassoth and Roy Watson argue that their sentences are unconstitutional because they are disproportionate to the crimes of which they were convicted, and they are cruel and unusual punishment in violation of the Eighth Amendment. Also they assert that Ind. Code § 35–50–2–2 is unconstitutional because it prohibits the trial court from considering their personal backgrounds in sentencing or suspending their sentences.

The penalty for the commission of a Class A felony is a fixed term of thirty (30) years with not more than twenty (20) years added for aggravating circumstances, nor more than ten (10) years subtracted for mitigating circumstances. Ind.Code § 35–50–2–4.

Under Ind.Code § 35–50–2–2, the trial court may suspend only that part of the sentence in excess of the minimum sentence (20 years) for dealing in cocaine or a narcotic drug as a Class A felony.

Monica Fassoth received the minimum sentence of twenty (20) years for dealing in cocaine. Roy Watson received a 40–year sentence for dealing in cocaine due to the trial court's finding that his prior criminal history and the amount of cocaine sold were aggravating factors. These sentences are in compliance with the statutes.

In a similar factual situation, we held that no constitutional issue is presented when a defendant fails to receive consideration of probation regarding a sentence pro-

vided for by the legislature. *Stroud v. State* (1988), Ind., 517 N.E.2d 780.

Further, we found in *Stroud* that the twenty (20) year sentence for dealing in cocaine, a Class A felony, is not unconstitutional, excessive, or manifestly unreasonable. Roy Watson's increased sentence was supported by aggravating circumstances in compliance with Ind.Code § 35–38–1–7. We find no error in appellants' sentencing.

Appellant Dennis Watson argues that the trial court committed reversible error by denying his motion for a separate trial. He asserts that he was prejudiced by the admission of voluminous testimony about large-scale drug transactions which was not connected to him, and the prejudicial circumstances denied him a fair trial.

■ The decision to grant or deny a motion for separate trials is within the discretion of the trial court. That determination is reviewable only for an abuse of discretion. We will look only at what actually happened at trial. *Dudley v. State* (1985), Ind., 480 N.E.2d 881; *Walker v. State* (1983), Ind., 444 N.E.2d 842.

■ A defendant is not entitled to a separate trial as a matter of right merely because damaging evidence of the actions of a codefendant reflects on him. There is no constitutional right to be protected from damaging evidence. The trial court does not abuse its discretion by refusing to order separate trials on the basis that a defendant may be found guilty by association where the evidence presents clearly-defined and distinctive roles for each defendant and there is no confusion over who may have spoken certain words or may have done certain acts. *Id.* at 849.

■ The evidence established that Roy Watson was the drug supplier, and Monica and William Fassoth were the intermediary delivery people to the buyers.

We find that each appellant's role was clearly defined by the evidence and the jury could determine appellant Dennis Watson's guilt apart from his association with his accomplices. We find no abuse of discretion.

■ Appellant Dennis Watson contends the trial court committed reversible error by refusing his tendered instruction on circumstantial evidence. His tendered instruction stated that when a case rests on circumstantial evidence, the circumstances must point unerringly to the guilt of the accused as to exclude every reasonable hypothesis of innocence.

The jury was instructed on the definitions of direct and circumstantial evidence and were told if the circumstances are susceptible to two reasonable inferences, they must find the accused innocent, even if the inference of guilt is equally impressive.

Appellant's tendered instruction was properly refused because its substance was covered by other instructions which were given. *Roland, supra.* We find no error in the refusal of appellant's instruction.

Appellant Dennis Watson claims the trial court erroneously denied his motion for a directed verdict and the evidence is insufficient to sustain his conviction. In reviewing the sufficiency of evidence, this Court will not reweigh the evidence or judge the credibility of the witnesses. *White v. State* (1986), Ind., 495 N.E.2d 725.

Appellant asserts that no evidence was presented which indicated that he was aware of and consented to the cocaine transaction, and his mere presence at the scene of the crime is not sufficient evidence to support his conviction.

■ Upon review of cases in which the evidence is circumstantial, it is not necessary that every reasonable hypothesis of innocence has been overcome but only that an inference which supports the jury verdict may be reasonably drawn. *Freed v. State* (1985), Ind., 480 N.E.2d 929. We find the evidence of appellant's involvement in the drug sale sufficient to sustain his conviction.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DeBRULER, J., concurring and dissenting with separate opinion.

DICKSON, J., concurs in result without separate opinion.

DeBRULER, Justice, concurring and dissenting.

I respectfully dissent to the judgment of the Court wherein it affirms the conviction of appellant Dennis Watson. The evidence that he knowingly aided the offense of dealing in cocaine is:

(1) He was present at his mother's house when the informant and his brother were there.

(2) Upon leaving the house he said either "I think its best if you leave the women behind" or "I think its best if we leave the women behind."

(3) He said "Be careful."

(4) Dennis Watson pulled into the restaurant parking lot next to the car in which his brother's girlfriend and the informant, her brother, were sitting and started talking to them.

(5) Several officers later testified they may have seen Dennis' car in the lot earlier.

The theory of the prosecution was that Dennis Watson was behaving like a lookout for the dealers. In any view, this is exceptionally sparse evidence of aiding in the transaction. No matter how far it is stretched, it fails to have that substantial probative character which can support the conclusion of guilt beyond a reasonable doubt. I would reverse that conviction.