**Fred LENOVER Appellant
(Defendant Below),**

v.

**STATE of Indiana Appellee
(Plaintiff Below).**

No. 83A01–8909–CR–368.

Court of Appeals of Indiana,
First District.

March 6, 1990.
Rehearing Denied April 16, 1990.

John A. Kesler, Sr., Kesler & Kesler, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Appellant-defendant Fred Lenover appeals his conviction of dealing in a schedule II controlled substance, a class B felony. We affirm.

Lenover's eventual arrest for dealing methamphetamine was the result of an undercover purchase by a police informant, Jessie Allen. Before the controlled buy at Lenover's garage, Allen was searched and a body transmitter was wired to him. Allen spoke with Lenover for a few minutes, then returned to the car in which Officer Cogwell waited, and obtained $250.00. Allen returned to the garage where Allen and Lenover made conversation while Lenover weighed the drug and placed it in a bag. Allen paid Lenover the $200.00 price requested, and returned to the car to deliver the drug and the $50.00 to Cogwell. Several other officers near the garage had monitored the transaction by radio and had tape-recorded it.

After a jury trial, Lenover was convicted of dealing in a schedule II controlled substance.

Lenover raises five issues in his appeal:
I. Whether the trial court erred in admitting into evidence State's exhibit 3, a tape recording of the drug transaction;
II. Whether the trial court should have granted Lenover's motion for a mistrial where the prosecutor's questions about prior drug transactions constituted evidentiary harpoons;
III. Whether the trial court erred in admitting State's exhibit 4, which showed that Lenover had been violent toward his girlfriend, defense witness Carol Benskin;
IV. Whether it was error to allow the alternate juror to retire with the jury during deliberations;
V. Whether the court should have granted a new trial after Lenover presented evidence that two jurors were asleep during part of the trial.

## I.

Lenover complains that the tape recording of the drug transaction was of such poor quality that it should not have been admitted. He points to the court reporter's difficulty transcribing the tape, on which she identified thirty-four inaudibles, chiefly to sections where Lenover was talking. Lenover relies on *Lamar v. State* (1972), 258 Ind. 504, 282 N.E.2d 795, in which the supreme court assigned prejudicial error to admission of a tape recording of defendant's jailhouse interview which was of poor quality. Several years after *Lamar*, our supreme court distinguished the facts in *Lamar* from those involving a recorded conversation while an informant is wearing a "bug." *Fassoth v. State* (1988), Ind., 525 N.E.2d 318. The court refused to hold such recordings to the same standard of quality which should be imposed upon tape recordings in more controlled settings where the defendant knows he is being taped and the State can take steps to ensure that the quality of the recording is good. *Id.* at 324. The tape recording of the drug transaction in *Fassoth* was sufficiently audible to understand that the informant and defendant were in the midst of a drug sale. Even aside from the quality of the tape, the court found no reversible error, because the content of the tape-recorded conversation was cumulative of the informant's testimony about the drug transaction. *Id.* at 324.

Our case fits squarely within *Fassoth*. The tape recording here was of fairly good quality because it did not contain static or interference. However, it is difficult to discern what Lenover is saying to Allen. It appears that the two were engaging in idle conversation on a variety of topics, which is what Allen testified they did while Lenover weighed and bagged the drug. We find no reversible error in the court's playing the tape for the jury.

## II.

At the time of the trial, Lenover had been charged with possession of drugs with intent to deliver in Chicago, Illinois, of which he was eventually acquitted. Lenover maintains that the many attempts the State made to get this information before the jury were an evidentiary harpoon and Lenover should have been granted a mistrial. An evidentiary harpoon is the placing of inadmissible evidence before the jury with the deliberate purpose of prejudicing the jury against the defendant. *McDonald v. State* (1989), Ind., 542 N.E.2d 552.

On direct examination of State's witness Jessie Allen, the prosecutor asked whether Allen had talked to Lenover about "anything up in Chicago, Illinois." The court sustained defense's objection, rejecting the State's attempt to show a common scheme or plan for dealing in drugs. R. 90.

On cross-examination of defense witness Jeffrey McCall, the State asked whether Lenover had ever been arrested on a drug charge. The State attempted to argue that the defense had "opened the door" to the issue of Lenover's drug use generally by asking McCall whether he had seen illegal drugs around Lenover's place, and whether McCall had seen Lenover take drugs. The court sustained the objection. R. 155.

The State asked Carol Benskin on cross-examination whether it would surprise her that Lenover was arrested for drugs in Chicago. The State supported that question by arguing that it was attempting to impeach her earlier assertions on cross-examination denying that Lenover used drugs or kept any around. That objection was sustained, but the court did not rule on Lenover's motions for mistrial and to admonish the jury. R. 236–37. Finally, the court overruled defense's objection to the State's question of Lenover whether he told Jessie Allen he was facing thirty to fifty years. The court found that question proper because it related to the tape-recorded conversation.

In *Riley v. State* (1986), Ind., 489 N.E.2d 58, during defendant's trial for drug dealing, the prosecutor made continual attempts, in spite of the motion in limine, to get into evidence defendant's prior drug dealing. The court deemed the questions to be a flagrant attempt by the prosecutor to blacken defendant's character. The prejudice to the defendant was compound-

ed in *Riley* because the sole evidence against Riley was presented via one witness's testimony, and all the questions were posed to that single witness. The prosecution persisted in the same line of questioning in spite of the court's initial ruling that the evidence was not admissible to demonstrate a common scheme or plan.

In the instant case, although the court sustained the objections to the same general questions posed by the State, we do not believe that the State's questions evince a deliberate attempt to get improper evidence before the jury. In this case, the State made a plausible argument for admission of the evidence on different grounds for each witness, albeit the court properly sustained the objections each time. This case is virtually indistinguishable from *Denny v. State* (1921), 190 Ind. 76, 129 N.E. 308, in which the court found no prejudicial error in the State's good faith questioning of different witnesses to which defense's objections were sustained.

The granting of a mistrial lies within the trial court's sound discretion, and will be reversed only upon a showing of clear error. *McDonald*, 542 N.E.2d at 554. We will not reverse because Lenover has shown no abuse of discretion.

### III.

■ During the State's cross-examination of Carol Benskin, the State asked whether she was testifying out of fear that Fred might "do something" to her. Benskin denied any motive of fear, and also denied that Fred had ever beaten or threatened to kill her. The State was then permitted to show the jury State's exhibit 4, which was a copy of an affidavit and informations charging Lenover with criminal recklessness, battery and criminal mischief. Benskin had pressed charges after she averred that Lenover, on one occasion, had hit her, thrown her around, threatened to kill her, and fired two shots at her.

Lenover claims that the evidence of the charges was inadmissible because it was irrelevant in Lenover's trial on drug dealing charges, and was highly prejudicial. The State counters that the evidence was

proper impeachment. We agree with the State.

■ Whether to permit cross-examination to test the credibility of a witness is within the trial court's discretion. *Huffman v. State* (1989), Ind., 543 N.E.2d 360. The general rule regarding the admissibility of facts in connection with impeachment is that any fact which tends to reflect upon the veracity of the testimony may be introduced to impeach the witness. *State v. Thompson* (1979), 179 Ind.App. 227, 385 N.E.2d 198, 213. Lenover hints that the evidence of violent behavior toward Benskin is a collateral matter which the State may not pursue for purposes of impeachment. This would be true if the State sought to introduce exhibit 4 merely to contradict Benskin's assertions that Lenover had never threatened her. Impeachment by matters collateral to the case is prohibited, and a matter is collateral if the party seeking to introduce it for purposes of *contradiction* would not be entitled to prove it as part of his or her case-in-chief. *Gaston v. State* (1983), Ind.App., 451 N.E.2d 360 (our emphasis); *Brown v. State* (1981), 275 Ind. 441, 417 N.E.2d 333. The State sought to establish Benskin's bias by showing she could be testifying out of fear of Lenover. When Benskin denied fearing Lenover, the State was entitled to show Benskin did not have reason to fear Lenover. As stated in *McCormick on Evidence* § 40, at 81 (1972):

> ... if the witness on cross-examination denies or does not fully admit the facts claimed to show bias, the attacker has the right to prove those facts by extrinsic evidence. In courtroom parlance, facts showing bias are not "collateral," and the cross-examiner is not required to "take the answer" ...

Accordingly, State's exhibit 4 was admissible. Although the court did not instruct the jury to use the evidence for the limited purpose of impeachment, Lenover waived any error by failing to request the court to admonish the jury or by failing to tender a limiting instruction. *Ridgeway v. State* (1981), Ind.App., 422 N.E.2d 410.

## IV.

 Lenover's issue respecting the presence of the alternate juror in the jury room during deliberations is wholly without merit in view of *Reichard v. State* (1987), Ind., 510 N.E.2d 163. An alternate juror may accompany the original twelve jurors to the jury room during deliberations so long as the court properly instructs him that he is not to participate in deliberations unless it becomes necessary for him to replace one of the jurors. *Id.* at 167. An instruction to that effect was among the court's final instructions, and Lenover does not allege that the instruction was not followed. Accordingly, there was no error here.

## V.

 Finally, Lenover asserts that two jurors were asleep during a portion of the testimony of defense witness Michael Geish. Lenover raised the matter in his motion to correct error, to which he attached several affidavits of courtroom spectators averring that the two sleeping jurors nodded off for about 10 minutes, and that the instances were "obvious" to the affiants and others in the courtroom. Apparently the jurors escaped the attention of Lenover, because he did not bring it to the court's attention during trial. The State submitted an affidavit of Officer Cogwell in which he stated he had not observed any jurors sleeping during the trial. Thus, the alleged misconduct became a factual issue which would be committed to the trial court's discretion. *Smith v. State* (1982), Ind., 432 N.E.2d 1363. Also, it must be shown that the juror's action actually resulted in prejudice to the defendant. *Id.* at 1368. With the guidance of *Smith* and cases in other jurisdictions that have considered the issue of sleeping jurors, we observe that the length of time a juror was asleep and the importance of the evidence may be taken into account when considering prejudice to the defendant. *See Smith* at 1368 (a juror's missing part of psychiatrist's testimony challenging defendant's claim of insanity could not have prejudiced defendant); *State v. Chestnut* (1982), Tenn. Crim.App., 643 S.W.2d 343 (juror fell asleep about five minutes of a three-day trial;

hence, defendant could not have been prejudiced); *Commonwealth v. Jones* (1983), 314 Pa.Super.Ct. 497, 461 A.2d 267.

 Here, two jurors were asleep about ten to fifteen minutes of the three-day trial, during testimony of one witness who had been testifying as to the layout of Lenover's garage and who was drawing a diagram on a chalkboard when the jurors were dozing. While we do not condone any inattentiveness on the part of the jurors, we fail to see how the jurors' alleged somnolence resulted in prejudice to Lenover, since he has not demonstrated the importance of the diagram and accompanying testimony to his defense.

Judgment affirmed.

RATLIFF, C.J., and HOFFMAN, J., concur.