**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**TYLER D. HELMOND**
Voyles Zahn Paul & Hogan
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JERMAINE M. LOCKETT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1107-CR-376 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D04-1009-FA-46

**May 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Jermaine M. Lockett appeals his convictions and the sentences imposed for dealing in cocaine, as a Class A felony, and possession of marijuana, as a Class A misdemeanor, following a jury trial. Lockett presents four issues for review, which we restate as:

1.      Whether the trial court abused its discretion when it denied Lockett's motion for a mistrial due to juror misconduct.

2.      Whether the trial court abused its discretion when it denied his motion to dismiss under Criminal Rule 4(B).

3.      Whether the trial court abused its discretion when it identified aggravators in support of Lockett's sentence.

4.      Whether Lockett's sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

In the early morning hours of August 26, 2010, Officer Douglas Weaver of the Fort Wayne Police Department was conducting surveillance, on foot, in a "high drug and crime area" in Fort Wayne. Transcript at 159. After watching from a vacant lot in the area for almost an hour, the officer noticed that a "[l]arge amount of vehicular and pedestrian traffic was coming to and from the [sic] 3715 Oliver Street." Id. at 161. Two males standing in front of the residence would make contact with the pedestrians and vehicle occupants who arrived. The males would look back and forth down the street before approaching a vehicle that was parked just north of the residence between 3715 and 3709 Oliver Street, and they would again look back and forth down the street before

returning to the residence. The men would enter the house with those people, who left the house again shortly.

Lockett was one of the two men walking back and forth to the house. Several times Officer Weaver observed Lockett approach a green Oldsmobile that was parked in front of the residence. Lockett always approached the passenger side of the Oldsmobile while the second man stayed back a few feet, looking up and down the street. Lockett would reach into the passenger front window each time, but the doors never opened and Lockett never sat in the vehicle.

At one point Officer Weaver saw Lockett retrieve an item from the front passenger side, place the item in Lockett's front pocket, remove another item, and put the removed item in his right hand. When Lockett began to walk away from the Oldsmobile, Officer Weaver approached and instructed Lockett to show his hands. Instead, Lockett began to walk around the back of the Oldsmobile toward the driver's side. When Officer Weaver again ordered Lockett to show his hands, Lockett threw the item from his right hand over the Oldsmobile toward the sidewalk. Officer Weaver then ordered Lockett to the ground.

When Officer Weaver looked into the Oldsmobile he observed "two clear plastic baggies with a green, leafy substance inside them in plain view on the center con[sole in] the front seat area of the vehicle." Id. at 166-67. Based on his training and experience, the officer believed the leafy substance to be marijuana. Officer Weaver then checked the sidewalk in the direction where he had seen Lockett throw something to the ground. There he found a small clear plastic baggie containing a white chalky substance, which the officer believed to be cocaine.

3

Officer Weaver arrested Lockett. In the search incident to arrest, officers who had arrived to assist found in Lockett's front right pocket a larger clear plastic back that also contained "the same off[-]white rocky substance that [Officer Weaver] believed to be cocaine." Id. at 168. Officers also found two additional bags in Lockett's small front right pants pocket and $187 in cash on him. And, in a later search of the vehicle, officers found a scale, a pocket knife, and a small container holding a brown substance.

Officers transported Lockett to the police station, where they placed him alone in an investigation room, although they monitored him from another room. They observed him remove an item from his shoe and then place his hand "down the back of his pants toward his buttocks." Id. at 171. When Officer Weaver then entered the investigation room, he asked about the item Lockett had removed. Lockett answered that he had placed it in his anus. A subsequent search of Lockett's anus disclosed a small clear baggie containing what later tested to be cocaine. Officers found an additional baggie in Lockett's sock and $460 cash under the sole of his shoe.

Testing of the contents of the plastic baggies found on Lockett and in his vehicle showed that they contained cocaine base. The contents of the bags weighed 1.65 grams, 7.84 grams, .28 gram, 1.14 grams, and .89 grams respectively. Tests also showed that the green leafy substance found in Lockett's car was marijuana and weighed 1.6 grams.

The State charged Lockett with dealing in cocaine, as a Class A felony, and possession of marijuana, as a Class A misdemeanor. The trial court appointed Gregory Fumarolo as defense counsel. Fumarolo represented Lockett at a pre-trial conference on November 15, 2010, when the December 1 trial date was confirmed. However, Lockett

4

and Fumarolo also alerted the trial court that the two had differences of opinion regarding Lockett's representation. And on November 30, Fumarolo filed a motion to withdraw. The trial court conducted a hearing the same day, after which the court granted the motion to withdraw and, on its own motion, vacated the December 1 trial date. On December 2, public defender Michelle Fennessy Kraus appeared for Lockett. The court reset the trial date for March 24, 2011.

On March 18, 2011, Lockett filed a motion to dismiss the charges for violation of his right to a speedy trial. He also moved for an order in limine as to drug evidence collected at the police station. The court denied the motion to dismiss and, over Lockett's objection, continued the trial date to June 15, 2011.

The jury trial commenced on June 15. The trial court admitted the drug evidence over Lockett's objection. During trial Lockett also filed a motion for a mistrial on the ground that one of the jurors had been sleeping. After questioning the juror, the trial court denied the motion, and the trial resumed. The jury found Lockett guilty of both counts as charged. On July 19, Lockett filed a pro se "[m]otion to [w]ithdraw [c]ounsel." Appellant's App. at 5. On July 15, the court convened for sentencing, but Lockett insisted that he did not want Kraus to represent him. As a result, and due to Lockett's behavior at the hearing, the trial court continued the sentencing hearing. On July 25 the court reconvened for sentencing and, following argument by counsel, entered judgment of conviction on the verdicts and sentenced Lockett to forty-five years for dealing in cocaine and one year for possession of marijuana, to be served concurrently. Lockett now appeals.

## DISCUSSION AND DECISION

### Issue One:  Motion for Mistrial

Lockett first contends that the trial court should have granted his motion for a mistrial because a juror fell asleep during trial.  "[J]uror misconduct is in the first instance a question for the trial court and the decision to grant or deny a mistrial is a matter committed to the trial court's discretion, reviewable solely on the issue of abuse of discretion."  Smith v. State, 432 N.E.2d 1363, 1367 (Ind. 1982) (citations omitted).  "[T]here is a two-step approach in determining whether prejudice has resulted from the juror's inattention.  First, it must be shown that the juror was actually inattentive.  Second, it must be shown that the juror's action actually resulted in prejudice to the defendant."  Id. at 1367-68 (internal quotation marks and citation omitted).  "This approach is consistent with our well-settled rule that although a trial may not be free from error, every error of the trial court does not require that the case be reversed. Only when the error has caused prejudice to the defendant is there cause to reverse."  Id. at 1368 (citation omitted).

We first consider whether Lockett has shown that a juror was actually inattentive. Lockett made a timely objection and requested a mistrial when he observed that Juror 36 was asleep during testimony crucial to the defense.[1]  Lockett relies on testimony by the trial court reporter and the trial court bailiff regarding their observations of Juror 36 to show that that juror was actually inattentive.  The court reporter testified that Juror 36's eyes were closed for at least fifteen minutes and that he was perfectly still each time she

---

[1] Juror 36 was seated in Seat 11 in the jury box.

looked at him during the testimony of two chemists. And the trial court bailiff testified that he had seen Juror 36's eyes closed during a two- or three-minute period when both attorneys were having a sidebar with the trial court about the sleeping juror.

But the trial court also questioned Juror 36 after Lockett moved for a mistrial:

Court: . . . We've noticed [you] closing your eyes and dozing a little bit. We don't know if you're actually dozing or if that's just the way you listen. My question is, after being here, at the close of the evidence, you can render a true and accurate verdict?

Juror 36: Yes.

Court: Thank you. Thank you so much. Anything else?

Ms. Kraus [for defense]: You have heard everything?

Juror 36: Yes, ma'am.

Ms. Kraus: All right. Would you agree that you've—and I'm not trying to pick. I'm just trying to represent my client. It has appeared that your eyes have been closed at least for approximately 15 minutes during the course of the last, I don't know, it's two people having testified. Am I accurate about that?

Juror 36: Yeah, off and on.

Ms. Kraus: All right. And that you say you've heard everything?

Juror 36: Yes.

Transcript at 224-25.

Alleged misconduct, such as sleeping by a juror, is a factual issue committed to the trial court's discretion. See Lenover v. State, 550 N.E.2d 1328, 1332 (Ind. Ct. App. 1990). Although Juror 36 was observed to have his eyes closed during a few minutes of testimony, he stated that he had heard everything and could render a true and accurate

verdict. In light of the responses by Juror 36, the trial court did not abuse its discretion when it determined that Lockett had not shown actual inattentiveness by that juror. See id.

Again, Lockett was required to show both prongs in order to demonstrate an abuse of discretion. See Smith, 432 N.E.2d at 1367. Lockett has not proved the first of two prongs required to show that he was entitled to a mistrial due to juror misconduct. Thus, we need not consider the second prong regarding prejudice. Lockett has failed to show that the trial court abused its discretion when it denied his request for a mistrial.

### Issue Two: Criminal Rule 4(B) Dismissal

Lockett next contends that the trial court abused its discretion when it denied his request to be discharged under Criminal Rule 4(B). Pursuant to Criminal Rule 4(B), a defendant

> shall be discharged if not brought to trial within seventy (70) calendar days from the date of [a speedy/early trial motion], except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

In other words, " 'the State has an affirmative duty to try an incarcerated defendant who requests a speedy trial within seventy days.' " State v. Jackson, 857 N.E.2d 378, 380 (Ind. Ct. App. 2006) (quoting McKay v. State, 714 N.E.2d 1182, 1186 (Ind. Ct. App. 1999)). However, under Criminal Rule 4(F), that seventy-day period may be extended where the delay is caused by the act of the defendant.

Here, the State charged Lockett on September 2, 2010. On September 28, by counsel, Lockett requested a speedy trial. At the November 15 pre-trial conference, the

8

trial court confirmed a December 1 trial date, but Lockett and his counsel informed the court of difficulties in the attorney-client relationship. On November 22, the Chief Public Defender received a letter from Lockett, asking for a new lawyer and accusing Fumarolo, Lockett's counsel, of "working with the DEA" and "trying to lose [Lockett's] case." Appellant's App. at 51. In the letter Lockett also said that the problems in the attorney-client relationship were personal, not merely a matter of strategy, and he asked for the appointment of new counsel. The Chief Public Defender forwarded the letter to the trial court.

On November 30, Lockett's counsel filed a motion to withdraw, and the trial court held a hearing on the motion the same day. At the hearing, Lockett's counsel agreed that the attorney-client relationship was "in an untenable position." November 30, 2010, Transcript at 4. The trial court noted to Lockett:

> You insist on a speedy trial. He [counsel] doesn't believe that's in your best interest. And certainly you've got your right to a speedy trial, but now we've got a situation where your attorney[-]client relationship has deteriorated in such a degree he doesn't feel that he can properly represent you and it doesn't sound like you want him to represent you either based on the letter that you sent Chief Public Defender Hammond.

Id. at 5. The trial court then ruled:

> All right, under the circumstances the Court finds that his [Lockett's] right to a fair trial and effective assistance of counsel, I'll waive his right to a speedy trial. Your [Fumarolo's] motion to withdraw is granted. I'll order the public defender to reassign this case. Cancel the trial tomorrow and we'll have a trial setting and status and all that on December—three weeks from today, December 21 at 9:00.

Id. at 6. At the conclusion of the hearing, the court informed Locket that new counsel would be appointed, and Lockett said, "Thank you." Id. at 8.

Our supreme court has addressed the tension between the two rights:

> [T]he right to assistance of counsel includes, as a necessary corollary, the right to adequate time for preparation. Moreover, Saunders orally requested a change of counsel in the first instance and therefore set in motion the chain of events which caused him to repeatedly require new counsel when conflicts arose. Any delay was for his benefit and was intended to insure him his constitutional rights. The chain of events was not complete until the day of trial when the trial judge refused to allow withdrawal of the same counsel Saunders had been appointed in the first place. The delay occasioned by these circumstances is attributable to Saunders. We therefore conclude Saunders was not denied his early trial right.

Saunders v. State, 562 N.E.2d 729, 736 (Ind. Ct. App. 1990), summarily aff'd in relevant part, 584 N.E.2d 1087, 1088 (Ind. 1992). In other words, where the delay is caused by change of defendant's counsel, such will be charged to the defendant only where actual delay results. Biggs v. State, 546 N.E.2d 1271, 1275 (Ind. Ct. App. 1989).

Lockett argues that he "did not have a right to effective assistance of counsel or a speedy trial; he had a right to both." Appellant's Brief at 11. Lockett is correct that he had both rights. But the circumstances in this case, namely the breakdown in the attorney-client relationship, prevented both rights from being preserved. Had the trial court maintained the trial date and denied the request by Lockett and his counsel to remove counsel from the case, Lockett could have later raised a claim of ineffective assistance of counsel due to the documented breakdown in the attorney-client relationship. The trial court chose instead to allow counsel to withdraw and order the appointment of new counsel in order to provide Lockett with effective assistance of counsel.

10

The delay beyond the seventy-day speedy trial date was caused by the breakdown in the attorney-client relationship and the request on the eve of trial, by both Lockett and his counsel, that the court appoint new counsel to represent Lockett. We conclude that the continuation of the trial date is attributable to Lockett and, therefore, that he was not denied his right to a speedy trial.

### Issue Three: Identification of Aggravators

Lockett also contends that the trial court abused its discretion when it sentenced him. Specifically, he argues that several aggravators found by the trial court are not supported by the record. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).

> So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion. As we have previously observed, "[i]n order to carry out our function of reviewing the trial court's exercise of discretion in sentencing, we must be told of [its] reasons for imposing the sentence . . . . This necessarily requires a statement of facts, in some detail, which are peculiar to the particular defendant and the crime, as opposed to general impressions or conclusions. Of course such facts must have support in the record." Page v. State, 424 N.E.2d 1021, 1023 (Ind. 1981). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." K.S. v. State, 849 N.E.2d 538, 544 (Ind. 2006) (quoting In re L.J.M., 473 N.E.2d 637, 640 (Ind. Ct. App. 1985)).
>
> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence— including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate

11

> remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

Id. at 490-91. In reviewing sentences in non-capital cases we examine both the written and the oral sentencing statements to discern the findings of the trial court. McElroy v. State, 865 N.E.2d 584, 589 (Ind. 2007).

Lockett contends that the trial court improperly identified certain aggravators. Specifically, he first argues that the trial court abused its discretion when it identified the use of a firearm as an aggravator in this case. At the sentencing hearing, after detailing Lockett's criminal history, the trial court summarized other aggravators. As one of the aggravators, the court stated, "Candidly, looking at your history and the facts and circumstances of this, drugs and guns together I will find as an aggravating circumstance." July 25, 2011, Sentencing Transcript at 7. The written sentencing statement also includes a similar statement of the aggravator: "Defendant involved with drugs and guns[.]" Appellant's App. at 142.

The trial court's reference to guns is indeed curious. There was no evidence at trial that Lockett used or possessed a gun when committing the instant offenses. Nor did the prosecutor argue that Lockett used or possessed a firearm when committing the offenses in this case, although he did mention Lockett's 1996 conviction for carrying a concealed weapon. The record does not support the trial court's reference to "guns" as an aggravator.

Lockett also complains that the sentencing statement is inadequate to the extent his sentence is based on the facts and circumstances of the case. In this regard he argues that

12

"nothing about the facts and circumstances of the allegations against Lockett were out of the ordinary." Appellant's Brief at 14. He further asserts that the trial court's sentencing statement is deficient because it does not set out the " 'particularized account of the aspects of the crime which illustrated to the court the defendant's deservedness of an enhanced sentence.' " Id. (quoting Wethington v. State, 560 N.E.2d 496, 509-10 (Ind. 1990)). A court may consider the facts and circumstances of the offenses when sentencing. Ind. Code § 35-38-1-7.1. But in such cases the trial court must explain why the manner of committing the offenses warrants the sentence imposed. Wethington, 560 N.E.2d at 509-10. Here, the trial court did not explain why the facts and circumstances of the offenses warrant the sentence imposed.

Lockett has met his burden to show that the trial court abused its discretion when it identified the two aggravators discussed above. However, the trial court also detailed Lockett's significant criminal history and his "disdain" for the court based on his conduct at the failed sentencing hearing as aggravators. For the same reasons discussed below in Issue Four, we can say with confidence that the trial court would have imposed the same sentence even without the aggravators Lockett appeals. See Trusley v. State, 829 N.E.2d 923, 927 (Ind. 2005). "[E]ven if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate." Mendoza v. State, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007), trans. denied. Thus, we consider whether Lockett's sentence is inappropriate under Appellate Rule 7(B).

**Issue Four: Appellate Rule 7(B)**

Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize [] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. See App. R. 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

The Indiana Supreme Court more recently stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant,

14

the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

We first observe the nature of the offenses. When Lockett was arrested, he had been observed walking to and from his parked car while meeting with people who had approached on foot or by car. When Officer Weaver instructed him to show his hands, Lockett attempted to hide evidence by throwing it away. Upon his arrest, he was found to possess more than eleven grams of cocaine as well as more than one gram of marijuana. And in his car officers found a scale and other devices commonly used in dealing drugs, and Lockett had hidden in his shoe a substantial amount of cash. While the details of Lockett's conduct leading up to his arrest seem rather ordinary as far as drug-dealing offenses go, the amount of cocaine he possessed was substantial.

We also consider Lockett's character. Excluding the aggravators discussed above, the trial court found the following aggravators, all of which relate to Lockett's character:

> 9 misdemeanor convictions; 8 felony convictions, including battery twice, domestic battery, bank robbery, 3 resisting law enforcement charges; multi-state offender. In Wayne County, active warrant; domestic violence charge; felony probation revoked once; on parole when present offenses occurred; active warrant from Franklin County, Ohio; . . . prior attempts at rehabilitation have failed and Defendant's actions and outbursts in this Court on July 15, 2011[,] show[] disdain for this Court's authority.

Appellant's App. at 142. Lockett is clearly a career criminal. His behavior leading up to trial and at the first sentencing hearing could be interpreted as manipulative at the very least and was definitely disruptive.

The sentence range for a Class A felony is twenty to fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. The trial court sentenced Lockett to an

15

aggregate sentence of forty-five years. Considering both the nature of the offenses and Lockett's character, especially his criminal history, failed attempts at rehabilitation, and the fact that the offenses were committed while he was on parole, Lockett has not shown that his sentence is inappropriate.

## Conclusion

The trial court did not abuse its discretion when it denied Lockett's motion for a mistrial due to juror misconduct. Lockett did not show that the juror whose eyes had been closed was actually inattentive during trial. The trial court also did not abuse its discretion when it denied his motion to dismiss under Criminal Rule 4(B). On the eve of trial, Lockett placed the court in the untenable position of hearing requests by Lockett and his counsel for his counsel to withdraw. Thus, the delay in the trial date is attributable to Lockett. Regarding Lockett's sentence, the record does not support two identified aggravators. However, in light of the nature of the offenses and Lockett's character, we cannot say that the forty-five-year aggregate sentence is inappropriate.

We affirm.

RILEY, J., and DARDEN, J., concur.